# McGovern v. Chilson

C.P. of Bradford County, no. 96CV000072.

*Kevin J. Fitzgerald,* for plaintiff.
*Bruce L. Coyer,* for defendants.

MOTT, *J.,* June 21, 2000—This matter chiefly revolves around an incident which occurred on February 17, 1995, in connection with a thyroidectomy surgery which was scheduled to be performed by the plaintiff, Thomas M. McGovern M.D., at the Robert Packer Hospital.[1] The plaintiff alleges that as the patient was being prepared for surgery, the defendant, Carolyn Chilson, while a nurse employed by the defendant, Robert Packer Hospital and in a defamatory manner, questioned whether the plaintiff possessed surgical privileges to perform that particular type of surgery. In addition, the plaintiff avers that Carolyn Chilson and the defendant, Judy Arena, also a nurse employed by the Robert Packer Hospital, made defamatory remarks in relation to the plaintiff during and following this incident.

On March 5, 1996, the plaintiff filed separate complaints against Carolyn Chilson and Judy Arena. In these two complaints, the plaintiff set forth claims in defamation, and in tortious interference with prospective business advantage. On March 3, 1997, the plaintiff also filed a complaint against the Robert Packer Hospital. In this

---

1. The plaintiff signed an employment contract and began working for the Guthrie Clinic in 1992. Surgeons employed by the Guthrie Clinic regularly perform surgeries at the Robert Packer Hospital.

complaint, the plaintiff set forth claims in tortious interference with prospective business advantage, injurious falsehood, intentional infliction of emotional distress, and negligence. On July 20, 1998, Carolyn Chilson, Judy Arena and the Robert Packer Hospital, defendants, jointly filed a motion for consolidation. That motion was granted on August 21, 1998, and these related matters were consolidated to number 96CV000072. On December 13, 1999, the defendants filed a motion for summary judgment. That motion is before the court for disposition.

We note that a party may move for summary judgment after the relevant pleadings are closed, if, after the completion of discovery relevant to the motions, the party who bears the burden of proof at trial has failed to produce evidence essential to submit the case to a jury at trial. Pa.R.C.P. 1035.2. Our standard in determining whether to grant such a motion is well settled. We must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Merriweather v. Philadelphia Newspapers Inc.,* 453 Pa. Super. 464, 471, 684 A.2d 137, 140 (1996). Summary judgment can only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*

We will initially consider the defendants' motion for summary judgment as it relates to the plaintiff's allegations filed against Carolyn Chilson and Judy Arena: First, concerning a cause of action in defamation, we note that defamation is a communication which tends to harm an individual's reputation so as to lower him or her in the estimation of the community, or to deter third persons from associating or dealing with him. *Zartman v. Lehigh*

*County Humane Society,* 333 Pa. Super. 245, 250, 482 A.2d 266, 268 (1984). Second, in order for defamation to occur either in the form of libel or slander, the defamatory material must be published or communicated to a third person. *Gaetano v. Sharon Herald Co.,* 426 Pa. 179, 182, 231 A.2d 753, 755 (1967).[2]

The defendants Chilson and Arena, however, argue that they are entitled to summary judgment on the plaintiff's defamation claims because the plaintiff cannot demonstrate special harm. In an ordinary defamation matter, Pennsylvania does not recognize presumed damages, but instead, requires a showing of special damages.[3] *Walker v. Grand Central Sanitation Inc.,* 430 Pa.

---

2. Also, 42 Pa.C.S. §8343 provides the following:

"Burden of proof.

"(a) Burden of plaintiff—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

"(1) The defamatory character of the communication.

"(2) Its communication by the defendant.

"(3) Its application to the plaintiff.

"(4) The understanding by the recipient of its defamatory meaning.

"(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

"(6) Special harm resulting to the plaintiff from its publication.

"(7) Abuse of a conditionally privileged occasion."

3. Special damages are those damages capable of being estimated in money. 81 Pa.D.2d 411. Also, in Pennsylvania, "actual" [real, concrete, identifiable] damages are synonymous with "compensatory" damages. *Weider v. Hoffman,* 238 F. Supp. 437, 445 (1965). Actual damages are "substantial," as distinguished from "nominal" [no substantial injury] damages. 25 C.J.S. Damages §2. Actual damages are either "general" or "special." *Weider v. Hoffman, supra* at 445; 25 C.J.S. Damages §2. General damages are such as the law implies and presumes to have occurred from the wrong complained of. 25 C.J.S. Damages §2.

Super. 236, 249, 634 A.2d 237, 243 (1993) (citing *Solosko v. Paxton,* 383 Pa. 419, 119 A.2d 230, 232 (1956)); 42 Pa.C.S. §8343(a)(7). "Generally speaking, damages for defamatory words when spoken are not recoverable in the absence of proof of special damages." *Id.* "Typically considered as pecuniary loss, 'special damages,' for purposes of defamation action under Pennsylvania law, are actual and concrete damages capable of being estimated in money, established by specific instances such as actual loss due to withdrawal of trade of particular customers, or actual loss due to refusal of credit by specific persons, all expressed in figures." 81 Pa.D.2d 411. Special harm is the loss of something having economic or pecuniary value. Restatement (Second) of Torts §575 comment b; *Beverly Enterprises Inc. v. Trump,* 182 F.3d 183, 188 (3d Cir. 1999). Loss of reputation alone is not enough to make the defamer liable unless it is reflected in some kind of economic or pecuniary loss. Restatement (Second) of Torts §575 comment b.

Here, the plaintiff contends that the number of referrals made to him by cardiologists reduced after, and as a result of, the incident of February 17, 1995. Therefore, the plaintiff avers that, as a result of the conduct of Carolyn Chilson and Judy Arena, the number of surgeries that he performed while at Robert Packer Hospital diminished, and that he suffered financial loss. However, the plaintiff himself testified that he was a salaried employee, that it made no difference with respect to his salary whether he treated more or less patients, and that, regardless, he was to receive a 10 percent increase in salary in each of the three years following his initial year with the Guthrie Clinic. (Defendants' exhibit A.) In fact,

the plaintiff indicated that he did not know of any manner in which he could earn additional money, aside from his salary, from his duties performed for the Guthrie Clinic, and, that if he did earn additional money, he would have to surrender that money to the Guthrie Clinic pursuant to the provisions of his contract. (Defendants' exhibit A.) Accordingly, we fail to see how a reduction in referrals could have caused the plaintiff financial loss. Furthermore, the plaintiff testified that he left his employment with the Guthrie Clinic of his own volition, and that no one at the Guthrie Clinic requested that he leave. (Defendants' exhibit B.)[4] Thus, the plaintiff has not demonstrated that the alleged conduct of Carolyn Chilson and Judy Arena caused his departure from the Guthrie Clinic, or brought about any financial loss to him. Hence, the evidence in the record before us is insufficient to establish pecuniary, or special, harm to the plaintiff.

Where words are held to be slanderous per se, however, proof of special damages is not required. *Walker v. Grand Central Sanitation Inc., supra* at 245, 634 A.2d at 241; Restatement (Second) of Torts §570.[5] Rather, a

---

4. The plaintiff left the Guthrie Clinic on July 8, 1996 to begin a private practice in the Pittsburgh area.

5. Restatement (Second) of Torts §570 provides the following:

"One who publishes matter defamatory to another in such a manner as to make the publication a slander is subject to liability to the other although no special harm results if the publication imputes to the other

"(a) a criminal offense . . .

"(b) a loathsome disease . . .

"(c) matter incompatible with his business, trade, profession, or office . . .

victim of slander per se is only required to make a showing of general damages. *Walker v. Grand Central Sanitation Inc., supra* at 245, 634 A.2d at 241; Restatement (Second) of Torts §621.[6] "Under the Second Restatement, a plaintiff in a slander per se case must show 'general damages:' proof that one's reputation was actually affected by the slander, or that she suffered personal humiliation, or both." *Walker v. Grand Central Sanitation Inc., supra* at 246, 634 A.2d at 242. The Restatement (Second) of Torts §573 provides:

"One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit, is subject to liability without proof of special harm."

This is applicable to members of a learned profession such as medicine. Restatement (Second) of Torts §573 comment b. Thus, statements that a physician is incompetent or negligent in the practice of his profession, are actionable. *Id.*

Here, the plaintiff asserts that Judy Arena made the false and malicious defamatory statements of "if it was another doctor, they wouldn't have questioned it," and that the plaintiff "couldn't be trusted." The first of these statements could suggest that the plaintiff's privileges

---

"(d) serious sexual misconduct . . . ." See also, *Chicarella v. Passant,* 343 Pa. Super. 330, 341, 494 A.2d 1109, 1115 (1985).

6. Restatement (Second) of Torts §621 provides the following:

"One who is liable for a defamatory communication is liable for the proved, actual harm caused to the reputation of the person defamed."

were questioned because, as opposed to other doctors whose privileges would not be questioned, the plaintiff was incompetent or negligent in the practice of his profession, thereby ascribing to him conduct or characteristics that would adversely affect his fitness for the proper conduct of his profession. With regard to the second of these statements, it is clear that a doctor constantly deals with his patients most private and personal matters, including their physical and mental well-being. Thus, suggesting that a doctor cannot be trusted may certainly impugn his fitness to conduct his profession. Therefore, these statements could disparage the plaintiff in the pursuit of his profession, or tend to harm him in it. Restatement (Second) of Torts §573 comment c. Furthermore, the plaintiff alleges that these statements actually harmed his good name and personal reputation. Thus, we characterize the plaintiff's defamation claim against Judy Arena as one in slander per se. If proven at trial, the statements could sustain the plaintiff's claim that his professional reputation was actually affected by the slander, or that he suffered personal humiliation, or both. Therefore, the plaintiff is not required to show special damages, and as a consequence, the defendant, Judy Arena, is not entitled to summary judgment upon her argument that the plaintiff has not demonstrated special harm.

However, concerning Carolyn Chilson, we find that the alleged defamatory statements attributed to her would not sustain a claim of slander per se. The plaintiff asserts that Carolyn Chilson stated, "There is a problem with Dr. McGovern's credentials," and "Dr. McGovern does not have privileges to do the procedure that is listed." In making these statements, it appears that Carolyn Chilson

was acting in furtherance of her duties as supervisor of the operating room. Thus, in questioning whether the plaintiff possessed the proper surgical privileges to perform the thyroidectomy, Carolyn Chilson was protecting the interests of the patient, the operating room staff, and the Robert Packer Hospital. While the statements uttered by Judy Arena can be categorized as slander per se, we do not believe the statements made by Carolyn Chilson can be so categorized. Her statements do not ascribe to the plaintiff conduct, characteristics, or a condition that would adversely affect his fitness for the proper conduct of his profession. Nor do these statements in any way suggest that the plaintiff is incompetent or negligent in the practice of his profession. They merely suggest that Dr. McGovern may not have had the proper credentials and privileges to do the procedure scheduled. Because the statements of Carolyn Chilson cannot be characterized as slander per se, the plaintiff must demonstrate special damages on his claim against her, and, as we discussed above, he has not done so. Thus, Carolyn Chilson is entitled to summary judgment on the defamation claim against her.

However, the defendants, Carolyn Chilson and Judy Arena, also argue that they are entitled to summary judgment as to the plaintiff's defamation claims because the allegedly defamatory statements made by them were conditionally privileged.[7] More specifically, these defendants contend that their communications were privileged

---

7. A "conditional privilege," unique to matters in defamation, exists so long as the privilege is not abused. *Chicarella v. Passant,* 343 Pa. Super. 330, 337, 494 A.2d 1109, 1113 (1985).

because there was a legitimate question as to whether the plaintiff was authorized to perform the thyroidectomy, because their communications were made in the interest of a third party, *i.e.* the patient, and because the inquiry concerning the surgical privileges was warranted since the safety of the patient was involved. A publisher of defamatory matter is not liable if the publication was made subject to a privilege, and the privilege was not abused. *Chicarella v. Passant,* 343 Pa. Super. 330, 337, 494 A.2d 1109, 1112 (1985). "Communications made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause are privileged." *Id.* at 337, 494 A.2d at 1113. Such occasions giving rise to conditional privileges, for defamation purposes, include: (1) when some interest of the publisher of the defamatory matter is involved; (2) when some interest of the recipient of the matter, or a third party, is involved; and (3) when a recognized interest of the public is involved. *Beckman v. Dunn,* 276 Pa. Super. 527, 536, 419 A.2d 583, 588 (1980). Once a matter is deemed conditionally privileged, a plaintiff must establish that the defendant abused that conditional privilege. *Chicarella v. Passant, supra* at 337, 494 A.2d at 1113. Abuse of a conditional privilege is present where the publication: (1) is actuated by malice or negligence; (2) is made for a purpose other than that for which the privilege is given; (3) is made to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege; or (4) includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose. *Beckman v. Dunn, supra* at 537, 419 A.2d at 588. Malice consists of a wrongful act, done intention-

ally, without just cause or excuse. *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 451, 273 A.2d 899, 909 (1971).

We find that evidence contained in the record shows that the alleged defamatory statements made by Carolyn Chilson were made subject to a conditional privilege. As we pointed out above, in questioning whether the plaintiff possessed surgical privileges to perform the particular type of surgery that was scheduled, it appears the alleged defamatory words were uttered by Carolyn Chilson to protect the interests of the patient, the operating room staff, and the Robert Packer Hospital. Furthermore, C.W. Konvolinka M.D., chairman of the department of surgery at the Robert Packer Hospital, stated, "the operative privileges for cardiothoracic surgery are vague and perhaps misleading to some." (Plaintiff's exhibit A.) Thus, these communications were made on a proper occasion, from a proper motive, and based upon reasonable cause.

We have difficulty, however, even considering the statements of Judy Arena as being made subject to a conditional privilege. Her statements that, "if it was another doctor, they wouldn't have questioned it," and that the plaintiff "couldn't be trusted," do not seem to be the kind of statements one would make merely to protect the patient or others. Nevertheless, even if we assume they were uttered for those purposes, when we consider whether the statements were made subject to a conditional privilege, we must also consider whether they were made in a proper manner. Here, the nature of the statements made by Judy Arena, raise doubt, at least, of whether they were made in a malicious or negligent manner, made for a purpose other than that for which the privilege is given,

and whether they included defamatory matter not reasonably believed to be necessary for the accomplishment of the proper purpose. Therefore, at a minimum, a genuine issue of material fact exists concerning whether Judy Arena abused the conditional privilege. Thus, Judy Arena is also not entitled to summary judgment upon her argument that her communications were privileged.

Conversely, we fail to see how the nature of Carolyn Chilson's statements could be construed as overstepping the protection afforded by the privilege. It appears that Carolyn Chilson's statements were appropriate for the purpose of ensuring that the plaintiff's surgical privileges were in order, and were reasonably necessary for the accomplishment of that purpose. Furthermore, the plaintiff, himself, when asked whether Carolyn Chilson acted maliciously in questioning his surgical privileges, answered, "I'm not sure." (Defendants' exhibit D.) Thus, we find that it is evident that Carolyn Chilson did not abuse the conditional privilege. Therefore, for these additional reasons, summary judgment on the defamation claim against her will be granted.

Next, we will consider the defendants' motion for summary judgment as it relates to the plaintiff's claim of tortious interference with prospective business advantage against Carolyn Chilson and Judy Arena. The plaintiff alleges that a defamatory course of conduct on the part of these defendants caused a decline in the number of patient referrals to him from cardiologists, thereby disrupting the plaintiff's relationship with prospective patients. This decline in the number of referrals, the plaintiff asserts, in turn resulted in a loss of a reasonable expectation of economic gain. With respect to tortious in-

terference with business and professional relationships, our Superior Court has stated that four elements must be pleaded:

"(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;

"(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

"(3) the absence of privilege or justification on the part of the defendant; and

"(4) the occasioning of actual legal damage as a result of the defendant's conduct." *Pawlowski v. Smorto,* 403 Pa. Super. 71, 78, 588 A.2d 36, 39-40 (1991). The Restatement (Second) of Torts defines "actual damages" for interference with a contract as follows, at section 774A:

"(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for

"(a) the pecuniary loss of the benefits of the contract or the prospective relation;

"(b) consequential losses for which the interference is a legal cause; and

"(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference . . . ." *Id.* at 78, 588 A.2d at 40. (citations omitted)

Thus, initially, we will determine whether the plaintiff has furnished evidence sufficient to prove pecuniary loss in relation to his interference claims. Pecuniary loss is "a loss of money, or of something by which money or

something of money value may be acquired." Black's Law Dictionary 1288 (4th ed. 1968). Special damages, as applied in a defamation matter, are defined as "actual and concrete damages capable of being estimated in money." 81 Pa.D.2d 411; see also, Restatement (Second) of Torts §575 comment b (special harm is the loss of something having economic or pecuniary value). Therefore, we conclude that pecuniary loss, as used here pertaining to the plaintiff's interference claims, is synonymous with special damages, as applied in a defamation matter. Thus, the analysis which we conducted above, concerning whether the plaintiff has provided evidence sufficient to demonstrate special damages as to his defamation claims, is applicable here in deciding whether the plaintiff has demonstrated pecuniary loss. As we stated above, the plaintiff has not demonstrated that the alleged conduct of Carolyn Chilson and Judy Arena caused special harm to him. He simply has not demonstrated that he suffered any pecuniary loss.

However, in his claims for tortious interference with prospective business advantage against Judy Arena and Carolyn Chilson, the plaintiff also asserts that these defendants caused actual harm to his reputation by way of their allegedly defamatory statements.[8] In characterizing the plaintiff's defamation claim against Judy Arena as one in slander per se, we concluded that Judy Arena's alleged defamatory statements, "if it was another doctor, they wouldn't have questioned it," and that the plaintiff

---

8. In his allegations against Judy Arena and Carolyn Chilson the plaintiff avers that as a result of their actions he remains greatly injured in his good name, credit, esteem, opinion and reputation.

"couldn't be trusted," if proven at trial, could sustain the plaintiff's claim that his reputation was actually affected by the slander. Thus, there also is sufficient evidence in the record to sustain the plaintiff's claim against Judy Arena for tortious interference with prospective business advantage. Therefore, Judy Arena is not entitled to summary judgment on the plaintiff's cause of action against her for tortious interference with prospective business advantage.

Concerning Carolyn Chilson, we again refer our analysis pertaining to the plaintiff's defamation claims. We have found that Carolyn Chilson's alleged defamatory statements would not sustain a claim of slander per se. It appears that in making the statements, "There is a problem with Dr. McGovern's credentials," and, "Dr. McGovern does not have privileges to do the procedure that is listed," Carolyn Chilson was acting in furtherance of her duties as supervisor of the operating room. Thus, we do not believe that her statements would sustain the plaintiff's claim that his reputation was actually affected by the statements. In addition, we found above that her statements were privileged and that it did not appear that she abused the privilege. Thus, there is insufficient evidence in the record to sustain the plaintiff's claim against Carolyn Chilson for tortious interference with prospective business advantage. He has not established pecuniary loss. He has not established actual harm to his reputation, and the record indicates her statements were privileged. Thus, Carolyn Chilson is entitled to summary judgment on this claim against her.

In summary, as to Judy Arena, we reiterate that the alleged defamatory statements made by her, if proven at

trial, could sustain a slander per se cause of action. On such a claim the plaintiff is not required to show special damages. As a result, the defendant Arena is not entitled to summary judgment based upon her argument that the plaintiff has failed to demonstrate special harm. In addition, even if the statements of Judy Arena were made subject to a conditional privilege, a genuine issue of material fact exists concerning whether she abused that privilege. Hence, she is also not entitled to summary judgment based upon her argument that her communications were privileged. Moreover, the plaintiff has furnished evidence in the record sufficient to sustain his claim that Judy Arena caused actual harm to his reputation, and consequently, Judy Arena is not entitled to summary judgment on the claim for tortious interference with prospective business advantage filed against her.

Concerning Carolyn Chilson, we note that the alleged defamatory statements made by her cannot be characterized as slander per se. Thus, the plaintiff must demonstrate special damages on the defamation claim against her. He has not proven special damages in this matter. Furthermore, even if we assumed arguendo that Carolyn Chilson's statements could be categorized as slander, per se, the plaintiff still could not prevail on his defamation claim against her, because her statements are protected by a conditional privilege that she did not abuse. Moreover, because the plaintiff has failed to prove the essential elements of pecuniary loss, actual harm to reputation and that Carolyn Chilson's statements were made in the absence of privilege or justification, he cannot prevail against her on his claim for tortious interference with prospective business advantage. Thus, Carolyn Chilson

is entitled to summary judgment on both claims against her.

We turn now to the allegations against the Robert Packer Hospital. Count I of those allegations set forth a claim in tortious interference with prospective business advantage. This claim is similar to the claims in tortious interference with prospective business advantage made against Carolyn Chilson and Judy Arena, and is based wholly upon the allegations that Carolyn Chilson and Judy Arena acted as agents of the Robert Packer Hospital. We recapitulate that the plaintiff has not established pecuniary loss in this matter, and thus, will not be permitted to make such an allegation against the Robert Packer Hospital at trial. However, there is sufficient evidence in the record to sustain the plaintiff's claim that Judy Arena, acting as an employee and agent of the Robert Packer Hospital, caused actual harm to his reputation. In the claim for tortious interference with prospective business advantage made against the Robert Packer Hospital, vis-à-vis the similar claims against the defendants Arena and Chilson, the plaintiff additionally avers that the tortious conduct of the defendants Arena and Chilson caused him to suffer from emotional distress. Concerning Judy Arena, we determine that emotional distress could reasonably be expected to result from her allegedly defamatory statements, uttered while she was acting as an employee and agent of the Robert Packer Hospital. Hence, the Robert Packer Hospital is not entitled to summary judgment pertaining to the plaintiff's claim for tortious interference with prospective business advantage made against it, and the plaintiff will be allowed to continue on his claims against the Robert Packer

Hospital for actual harm to his reputation and for emotional distress.

In their motion for summary judgment the defendants do not even mention the claims set forth in Counts II, III and IV of the complaint against the Robert Packer Hospital. Thus, summary judgment will not be granted on those counts.

Accordingly, we enter the following:

## ORDER

And now, June 21, 2000, in accord with the opinion filed this date, the motion for summary judgment filed by the defendants, Carolyn Chilson, Judy Arena and the Robert Packer Hospital, is granted in part and denied in part. Concerning Judy Arena, the motion for summary judgment is denied. Concerning Carolyn Chilson, the motion for summary judgment is granted. Concerning the Robert Packer Hospital, the motion for summary judgment is denied. As a result, on praecipe, the clerk of courts is directed to enter judgment in favor of the defendant Carolyn Chilson, and against the plaintiff on all claims asserted in the complaint filed against the said defendant.