J-S02044-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CYNTHIA SHANER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| UPMC SUSQUEHANNA AND GERILYN | : | |
| KOONTZ | : | No. 922 MDA 2019 |

Appeal from the Order Entered May 22, 2019
in the Court of Common Pleas of Lycoming County
Civil Division at No(s): 18-1363

BEFORE: BENDER, P.J.E., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:           **FILED MARCH 24, 2020**

Cynthia Shaner ("Shaner") appeals from the Order sustaining the Preliminary Objections of UPMC Susquehanna ("UPMC") and Gerilyn Koontz ("Koontz") (collectively, "the Defendants") and dismissing Shaner's Complaint. We affirm.

The trial court summarized the relevant history underlying the instant appeal as follows:

> Plaintiff [Shaner] contends that Defendant [Koontz], employed as a registered nurse at [UPMC], had accessed [Shaner's] medical records when [Shaner] was admitted overnight with complaints of chest pain. [Shaner] alleged that [Koontz] had invaded [Shaner's] privacy, and that a Facebook post by [Koontz,] which read[,] "Getting older is such an adventure. Like is this chest pain indigestion or a heart attack? Can't wait to see if I'm alive tomorrow," amounted to unlawful publication of [Shaner's] personal and private health information.

[] Shaner filed her [C]omplaint[1] on or about September 18, 2018, to which [Koontz] filed Preliminary Objections on October 9, 2018. [The trial court] issued an Opinion and Order sustaining [Koontz's] Preliminary Objections and dismissing all counts of [Shaner's] Complaint on December 12, 2018. A Motion to Reconsider and Motion to Amend Complaint [were] filed on December 24, 2018; said [M]otions were denied on February 4, 2019, with leave to file an Amended Complaint. An Amended Complaint was filed on February 5, 2019. [] Koontz filed Preliminary Objections to [Shaner's] Amended Complaint on February 15, 2019. [The trial court] then sustained [] Koontz's Preliminary Objections and dismissed [] Shaner's Amended Complaint in its entirety on May 14, 2019.[2] [Shaner] filed her Notice of Appeal on June 3, 2019, and filed her [C]oncise [S]tatement of matters complaint of on appeal on July 9, 2019 ….

Trial Court Opinion, 8/8/19, at 1-2 (unnumbered) (footnotes added).

Shaner presents the following issues for our review:

1. Whether the [trial] court erred in finding that [Shaner] did not allege any disclosure by her physician, or particularly cite 42 Pa.C.S.[A. §] 5929[?]

2. Whether the [trial] court erred in finding that the disclosure of [Shaner's] medical condition is limited to sexually transmitted diseases[?]

3. Whether the [trial] court erred in finding that a nurse who was not involved in [Shaner's] care, who looked at [Shaner's] medical records and posted about her hospital stay on Facebook, which was seen and forwarded to [Shaner] by friends, did not satisfy the publicity standard for invasion of privacy[?]

4. Whether the trial court erred in finding that a Facebook post by [] Koontz about [Shaner's] medical stay did not satisfy the element of publication of private facts[?]

---

[1] Shaner's Complaint averred causes of action for invasion of privacy against UPMC and Koontz.

[2] The trial court's Order, although dated May 14, 2019, was not filed until May 22, 2019.

Brief for Appellant at 5-6. In the Argument section of her appellate brief, however, Shaner presents the following two claims: "Invasion of Privacy" and "Breach of Physician-Patient Confidentiality". *See id.* at 14, 19. We will accordingly limit our discussion to those issues addressed in Shaner's brief. *See* Pa.R.A.P. 2119(a) (mandating that an appellant must develop an argument with citation to and analysis of relevant legal authority), 2116 (setting forth the requirements for the statement of questions involved); *see also Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that an appellate court is required to deem abandoned those issues which have been identified on appeal but are unsupported by argument in the brief).

Our Supreme Court has set forth the applicable standard of review as follows:

> On appeal, we "exercise *de novo* review of a lower tribunal's order sustaining preliminary objections in the nature of a demurrer." *William Penn Sch. Dist. v. Pa. Dep't of Educ.*, … 170 A.3d 414, 434 (Pa. 2017). A demurrer "tests the legal sufficiency of the complaint." *Ins. Adjustment Bureau[, Inc. v. Allstate Ins. Co.*], 905 A.2d [462,] 468 [(Pa. 2006)]. "For the purpose of evaluating the legal sufficiency of the challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts." *Mazur v. Trinity Area Sch. Dist.*, … 961 A.2d 96, 101 (Pa. 2008).
>
> The "question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*,

… 866 A.2d 270, 274 (Pa. 2005) (quoting ***MacElree v. Phila. Newspapers, Inc.***, … 674 A.2d 1050, 1056 (Pa. 1996)).

***Commonwealth v. UPMC***, 208 A.3d 898, 908-09 (Pa. 2019).

Shaner first claims that the trial court improperly sustained the Defendants' Preliminary Objections and dismissed Shaner's cause of action against the Defendants for invasion of privacy-intrusion upon seclusion. Brief for Appellant at 15. According to Shaner, Koontz was working in the Emergency Room at UPMC, but had no contact with Shaner, "except what [Koontz] could presumably discern from medical information on her computer." ***Id.*** at 16. Shaner contends that Koontz improperly accessed Shaner's private medical information from her computer, and then posted about it on Facebook. ***Id.*** Shaner acknowledges that Koontz did not disclose Shaner's name in the post, but "used the exact symptoms reported by [Shaner's] medical records that day." ***Id.*** at 17. Thus, Shaner asserts, Koontz "intruded into the private affairs of [Shaner] by accessing her private medical records." ***Id.*** Further, Shaner asserts that Koontz's Facebook post was "liked" by 39 people; Shaner's personal medical issues were made public; a reasonable person would be highly offended by the disclosure; and the act caused Shaner humiliation in the community, "as others came up to talk to [Shaner] about the Facebook post and her medical issues." ***Id.*** at 19. In support, Shaner relies upon this Court's decisions in ***Haddad v. Gopal***, 787 A.2d 975 (Pa. Super. 2001), and ***Chicarella v. Passant***, 494 A.2d 1109 (Pa. Super. 1985).

To assert a claim for invasion of privacy—intrusion upon seclusion in Pennsylvania,

> a plaintiff must aver that there was an intentional intrusion on the seclusion of their private concerns[,] which was substantial and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities.

***Pro Golf Mfg. v. Tribune Review Newspaper Co.***, 809 A.2d 243, 247 (Pa. Super. 2002); ***see also*** Restatement (Second) of Torts § 652B, Comment C (providing that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another in his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.").

As explained in the Pennsylvania Standard Jury Instructions, "[c]onduct that is highly offensive to a reasonable person is conduct that a reasonable person, in similar circumstances, would find very objectionable or that a reasonable person in similar circumstances could be expected to take with serious offense." Pa. SSJI (Civ. 13.12).

In its Opinion, the trial court addressed Shaner's claim and concluded that it lacks merit, reasoning as follows:

> In order for [] Shaner's claims of intrusion to be sufficient[,] there must be specific averments that [] Koontz['s] alleged intrusion was so egregious that it caused "mental suffering, shame or humiliation to a person of ordinary sensibilities," as held by the Court in ***Chicarella***[, 494 A.2d at 1114.] In ***Chicarella***, the [Superior] Court asserted that the disclosure of a specific medical diagnosis was insufficient to allege a substantial and highly

- 5 -

offensive intrusion upon seclusion. In addressing allegations sounding in intrusion upon seclusion, the **Chicarella** Court stated that "the brief description of [the] appellant's medical treatment cannot be deemed a substantial intrusion." **Id.** at [1114]. In the matter at bar, [the trial court] does not believe that [] Shaner has alleged that the intrusion would have been highly offensive to a reasonable person, nor that it was substantial enough for a reasonable person to strongly object. **DeAngelo v. Fortney**, 515 A.2d 594, 595 (Pa. Super. 1986).

Trial Court Opinion, 8/8/19, at 2 (unnumbered). We agree with the sound reasoning of the trial court, as set forth above, and affirm on this basis as to Shaner's first claim.[3] **See id.**

In her next claim, Shaner asserts that the trial court improperly dismissed her cause of action for breach of physician-patient confidentiality. **See** Brief for Appellant at 19. Shaner contends that her "medical information was posted on Facebook for all to see." **Id.** at 21. According to Shaner, "Koontz accessed [Shaner's] medical treatment for that day and tried to humiliate [Shaner] by making fun of her conditions." **Id.** Shaner asserts that anyone at UPMC could access her medical information; she did not consent to the release of her information; Koontz intentionally looked up Shaner's medical records; and Koontz "talked about what she saw on Facebook." **Id.**

---

[3] In affirming, we particularly note that Koontz's Facebook post did not identify Shaner by name, or indicate that it pertained to any UPMC patient. Further, the Facebook post did not disclose that Shaner, or any patient, had contracted an illness or suffered from a condition such that the post would be highly offensive to a reasonable person.

In **Haddad**, **supra**, this Court held that a cognizable action sounding in breach of physician-patient confidentiality exists in this Commonwealth. **Haddad**, 787 A.2d at 978. In **Grimminger v. Maitra**, 887 A.2d 276 (Pa. Super. 2005), this Court relied on **Haddad** and the evidentiary privilege set forth at 42 Pa.C.S.A. § 5929, physicians not to disclose information, for a rough formulation of what a breach of the confidential duty between physician and patient entails:

> [In **Haddad**,] [t]his Court found an actionable breach of physician-patient confidentiality and stated[,] "[d]octors have an obligation to their patients to keep communications, diagnosis, and treatment completely confidential." [**Haddad**, 787 A.2d] at 981. However, in stating this standard, the [**Haddad**] Court emphasized the fact that a sexually transmitted disease was at issue. **See id.** Our courts have recognized sexually transmitted diseases to be loathsome diseases which blacken one's character. **See Agriss v. Roadway Exp., Inc.**, … 483 A.2d 456, 470 (Pa. Super. 1984); **see also Evans v. Workmen's Compensation Appeal Board (Julia Ribaudo Home)**, … 617 A.2d 826, 828 (Pa. Cmwlth. 1992) ([stating that the] "[b]lackening of the character results from testimony concerning a loathsome disease."). Therefore, the **Haddad** standard … must be limited to the context of the privilege statute[4] which protects against the disclosure of information directly related to a patient's confidential information that blackens their reputation.

**Grimminger**, 887 A.2d at 280 (footnote added).

---

[4] **See** 42 Pa.C.S.A. § 5929 (providing that "[n]o physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries.").

In her Complaint, Shaner avers that Koontz posted the following statement on Facebook: "Getting older is such an adventure. Like is this chest pain indigestion or a heart attack? Can't wait to see if I'm alive tomorrow." Plaintiff's Complaint, ¶ 6. As set forth above, the Facebook post did not identify Shaner, or state that the post pertained to any patient at UPMC. Further, the post did not disclose a medical condition or diagnosis, or that Shaner, or any patient, had contracted an illness or suffered from a condition that would blacken their character. *See Grimminger*, *supra*. Consequently, we discern no error by the trial court in sustaining the Defendants' Preliminary Objections, and dismissing Shaner's Complaint.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/24/2020